FILED
97 APR 30 PM 3: 16
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| PATRICIA RODGERS, | } | |
| Plaintiff, | } | |
| v. | } | CASE NO. CV 96-B-3024-J |
| THE INDEPENDENT LIFE AND ACCIDENT INSURANCE COMPANY, et al., | } | |
| Defendants. | } | |

ENTERED
APR 3 0 1997

## MEMORANDUM OPINION

Currently before the court is the Motion to Remand this action to the Circuit Court of Fayette County, Alabama, filed by plaintiff Patricia Rodgers.[1] Plaintiff argues that the case is due to be remanded because the court lacks subject matter jurisdiction. Defendants counter that the present action is completely preempted by the Health Insurance Portability and Accountability Act of 1996 and that, therefore, the court has subject matter jurisdiction under 28 U.S.C. § 1331. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that the present action is not completely preempted. Consequently, the court lacks subject matter jurisdiction, and the Motion to Remand is due to be granted.

---

[1] Identical motions are pending before this court in civil action numbers 96-B-3027-J; 96-B-3028-J; 96-B-3029-J; 96-B-3030-J; 96-B-3031-J; 96-B-3032-J; 96-B-3033-J; 96-B-3034-J; and 96-B-3035-J. This Memorandum Opinion is applicable to the Motion to Remand filed in each of these cases.



## BACKGROUND

Plaintiff filed her complaint on October 17, 1996, alleging that defendants The Independent Life and Accident Insurance Company ("Independent Life") and Randy J. Jones ("Jones"), and other fictitious parties, had defrauded her in selling to her a hospital and surgical indemnity insurance policy ("policy"). The allegations of the complaint concern defendants' selling to plaintiff an insurance policy that was designed to terminate when she reached the age of sixty-five or when she became eligible for Medicare benefits. (*See* Ex. A to Compl.). The contract provided, however, that if Independent Life continued to accept premiums after the policy should have terminated, the policy would stay in force for the time covered by the premiums. (*Id.*) The essence of the complaint is that because of the Medicare and Medicaid laws, the policy lost any value that it had once the plaintiff became eligible for Medicare or Medicaid. Thus, plaintiff claims that because she was unaware of the provisions of the policy and Medicare and Medicaid law, selling the policy to plaintiff and continuing to collect premiums on the policy under these circumstances was fraudulent.

Specifically, plaintiff asserts that although defendants explicitly or implicitly represented to plaintiff that the policy would continue in effect so long as plaintiff paid premiums on the policy, (Compl. ¶ 9), the plaintiff's coverage under the policy actually terminated when the plaintiff became eligible for Medicare or Medicaid. (Compl. ¶ 8). Furthermore, the plaintiff alleges that defendants "failed to disclose and, in fact, suppressed and concealed from plaintiff" the fact that the benefits under the policy expired when the plaintiff reached a certain age and that the benefits would be payable to the State of Alabama rather than plaintiff if plaintiff were eligible for Medicaid. (Compl. ¶ 9). According to plaintiff, therefore, the policy was "worthless and

without use or benefit to the plaintiff." (Compl. ¶ 10). Thus, because defendants knew that the policy would be worthless and without use to the plaintiff, defendants "intentionally, knowingly, and deliberately implemented a fraudulent scheme designed to defraud the plaintiff . . . of premiums and money in exchange for said worthless supplemental health insurance." (Compl. ¶ 10). In implementing this scheme, defendants allegedly "fraudulently suppressed from the plaintiff the fact [that] plaintiff's policy was worthless, in that the supplement was worthless at such time as the plaintiff first became or would become eligible for Medicare/Medicaid benefits." (Compl. ¶ 11).

## DISCUSSION

Defendants first argue that plaintiff has artfully neglected to plead federal claims that are necessary to the resolution of the present action. Defendants have not articulated the substance of the allegedly omitted federal claims, however, and the defendants' first argument therefore fails. The plaintiff may choose to allege only state-law causes of action, and defendants have not demonstrated that plaintiff failed "to plead necessary federal questions in [her] complaint." *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983). Plaintiff has alleged fraud under state law, and no federal questions need to be pleaded in order to prove state-law fraud. Furthermore, to the extent that defendants argue the plaintiff's claims arise under federal law because they require interpretation of federal law, defendants have not sufficiently developed this argument to meet their burden of establishing jurisdiction. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (holding that the removing party has the burden of proving the court's jurisdiction).

Defendants also argue that the allegations in plaintiff's complaint are completely preempted by provisions of the Health Insurance Portability and Accountability Act of 1996 § 271, 42 U.S.C.A. § 1395ss(d)(3)(A) (West. Supp. 1997) ("the Act"). Defendants contend that plaintiff's allegations are preempted by two specific provisions of the Act. The first provision states:

> For purposes of this subparagraph, a health insurance policy (other than a Medicare supplemental policy) providing for benefits which are payable to or on behalf of an individual without regard to other health benefit coverage of such individual is not considered to "duplicate" any health benefits under this subchapter; under subchapter XIX of this chapter, or under a health insurance policy, and subclauses (I) and (III) of clause (i) do not apply to such a policy.

42 U.S.C.A. § 1395ss(d)(3)(A)(iv) (West Supp. 1997). The second provision on which defendants rely states:

> A State may not declare or specify, in statute, regulation, or otherwise, that a health insurance policy (other than a Medicare supplemental policy) or rider to an insurance contract which is not a health insurance policy, that is described in clause (iv), (v), or (vi)(III) and that is sold, issued, or renewed to an individual entitled to benefits under Part A or enrolled under part B "duplicates" health benefits under this subchapter or under a Medicare supplemental policy.

*Id.* § 1395ss(d)(3)(A)(viii)(II). Defendants also point to the "limitation on legal action" section of the Act as requiring dismissal of plaintiff's complaint. That section states:

> (2) LIMITATION ON LEGAL ACTION.--Subject to paragraph (3), no legal action shall be brought or continued in any Federal or State court insofar as such action--
>     (A) includes a cause of action which arose, or which is based on or evidenced by any act or omission which occurred, during the transition period; and
>     (B) relates to the application of section 1882(d)(3)(A) of the Social Security Act [42 U.S.C. § 1395ss(d)(3)(A)] to any act or omission with respect to the sale, issuance, or renewal of any health insurance policy that is described in clause (iv) or (v) of such section (as amended by subsection (a)).

Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, § 271(c)(2), 1996 U.S.C.C.A.N. (110 Stat.) 1936, 2036.

Under the "well-pleaded complaint" rule, the presence of a federal defense to a state-law cause of action, including the defense of preemption, does not ordinarily confer jurisdiction upon a federal court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987). Complete preemption, however, is an "independent corollary" to the well-pleaded complaint rule that transforms an ordinary state-law cause of action into one stating a federal claim where the preemptive force of the federal statute is extraordinary. *Id.* at 393; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Where complete preemption exists, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

Defendants characterize plaintiff's complaint as one alleging that the insurance policy in question "duplicates" the coverage provided by Medicaid and Medicare. Assuming *arguendo* that the complaint does allege duplication, the plain language of the Act would suggest that defendants could raise the defense of preemption.[2] Complete preemption, however, requires **extraordinary** preemptive force, and such force is not present in the Act. In fact, the Act states that, "[s]ubject to subclause (II), nothing in this subparagraph shall restrict or preclude a State's ability to regulate health insurance policies, including any health insurance policy that is described in clause (iv), (v), or (vi)(III)." 42 U.S.C. § 1395ss(d)(3)(A)(viii)(I). Although subclause (II), quoted above, does apparently prohibit a state from declaring that a policy "duplicates" the benefits provided by

---

[2] The court expresses no judgment about the actual viability of that defense, however. The merits of any defense raised by defendants will be for the state court to decide.

5

Medicare, neither the Act nor the statute as a whole "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *See Metropolitan Life*, 481 U.S. at 65. Thus, assuming without deciding that the Act preempts plaintiff's claims, the Act does not completely preempt those claims.

Complete preemption is necessarily rare. Only two areas of federal law of which the court is aware have been held consistently to give rise to complete preemption--§ 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. *See Metropolitan Life*, 481 U.S. at 63-64, 65. Section 301(a) of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1994). Section 502(f) of ERISA states: "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f). The statute at issue in the present case does not contain such a jurisdictional provision.

Furthermore, in considering the completely preemptive nature of ERISA, the Supreme Court stated that the legislative history consistently represented Congress's "clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA." *Metropolitan Life*, 481 U.S. 66. The Court went on to say,

6

> the touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court.

*Id.* In concurring, Justice Brennan noted that the Court's decision was a narrow one and stated, "[i]n future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." *Id.* at 67-68 (Brennan, J., concurring).

The Act does not contain any such clear congressional intent that suits brought under state law be completely preempted by the provisions of § 271 of the Act. In fact, the Act shows exactly the opposite congressional intent; § 271 specifically states that subject to a prohibition from declaring that a policy duplicates Medicare benefits, "nothing in this subparagraph shall restrict or preclude a State's ability to regulate health insurance policies . . . ." 42 U.S.C.A. § 1395ss(d)(3)(A)(viii)(I). Thus, the court is of the opinion that the Act does not completely preempt the state-law claims brought by plaintiff and that federal jurisdiction over plaintiff's claims does not exist.

This conclusion is supported by the Tenth Circuit's recent analysis of complete preemption in which the court conducted a fairly involved examination of the doctrine and its history. *See Schmeling v. Nordam*, 97 F.3d 1336 (10th Cir. 1996). The court noted that the scope of the doctrine was not entirely clear as, "'[t]he evolution of the doctrine . . . has been one of fits-and-starts and zig-zags [and] has, not surprisingly, occasioned both confusion and disagreement among the federal circuit and district courts.'" *Id.* at 1339 (citation omitted) (alteration in original).

7

Therefore, in an effort to determine the scope of the doctrine, the court examined the line of cases establishing the notion of complete preemption. Although the Tenth Circuit's analysis of complete preemption is not binding on this court, it is instructive.

*Schmeling* sought to clarify a "tension in the Supreme Court cases" by examining the meaning of a statement from *Caterpillar*. *See Schmeling*, 97 F.3d at 1342. In *Caterpillar*, the Supreme Court stated that, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." 482 U.S. at 393. To the Tenth Circuit, this statement created a tension in the Supreme Court's preemption analysis because it seemed to depart from the requirement that the preempting statute provide a federal cause of action. *Schmeling*, 97 F.3d at 1341. After examining the decision, however, the Tenth Circuit concluded that the *Caterpillar* Court sought "to apply the complete preemption doctrine, not to amend it." *Id.* at 1342. The court concluded that "complete preemption" was best understood as a term of art that describes "the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Id.*[3]

The court is of the opinion that the Tenth Circuit's analysis of the complete preemption doctrine is the correct one, and the analysis provides additional support for the court's conclusion that the Act does not completely preempt plaintiff's state law claims. The Act does not provide

---

[3] The court noted that the federal cause of action need not provide the same remedies as the state action. *Id.* at 1343.

8

for a federal cause of action for the acts alleged by plaintiff.[4] *See Wright v. Combined Ins. Co. of Am.*, No. 4:96cv305-D-B, 1997 WL 88233, at *7 (N.D. Miss. Feb. 4, 1997). Thus, under the *Schmeling* analysis, the Act does not completely preempt plaintiff's state-law causes of action. Although the federal law may provide a defense to plaintiff's claims, it does not provide a basis for federal jurisdiction over plaintiff's claims. Thus, because the court is without subject matter jurisdiction over this action, the motion to remand is due to be granted.

## CONCLUSION

Based on the foregoing, the court is of the opinion that it lacks subject matter jurisdiction over the present action. Therefore, plaintiff's Motion to Remand is due to be granted. An Order is accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 30th day of April, 1997.

*[signature]*
SHARON LOVELACE BLACKBURN
United States District Judge

---

[4] 42 U.S.C.A. § 1395ss(d)(3)(A)(i) (West Supp. 1997) makes it unlawful to sell a health insurance policy to an individual entitled to benefits under part A or enrolled under part B of that subchapter, "with knowledge that the policy duplicates health benefits to which the individual is otherwise entitled under this subchapter or subchapter XIX of this chapter." *Id.* § 1395ss(d)(3)(A)(i)(I). The statute provides for criminal and civil penalties for violations of that provision. *Id.* § 1395ss(d)(3)(A)(ii). Defendants (who, as the removing parties, have the burden of proving the court's jurisdiction, *see Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996)) have not pointed to any language of this statute or otherwise that suggests that the preceding provisions give rise to a private cause of action. Congress has specifically provided for a private cause of action under other sections of the Medicare statute, *see, e.g.*, 42 U.S.C.A. § 1395y(b)(3)(A), and the absence of such a specific provision under 42 U.S.C.A. § 1395ss(d)(3)(A) suggests to the court that no private cause of action for violation of the provisions of clause (i) exists under federal law.